# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| THE INDIANA RAIL ROAD COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 2:09-cv-386-WTL-WGH |
| ) | |
| MOSAIC CROP NUTRITION, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ENTRY ON PARTIAL MOTION FOR SUMMARY JUDGMENT

Before the Court is the Plaintiff's Partial Motion for Summary Judgment (Docket No. 52). This motion is fully briefed, and the Court being duly advised, now **GRANTS IN PART AND DENIES IN PART** the motion for the reasons and to the extent set forth below.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not

required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

On January 29, 2009, the Plaintiff, Indiana Rail Road Company ("Indiana Rail") and the Defendant, Mosaic Crop Nutrition, LLC ("Mosaic"), entered into a contract for the storage of up to 105 potash-containing rail cars. In May 2009, the parties entered into another contract (the "May Contract") covering the storage of an additional 105 rail cars. On June 12, 2009, Indiana Rail moved 69 of the rail cars to a storage track near Jasonville, Indiana. In order to secure the cars, Indiana Rail applied 8 handbrakes, 4 on each end of the group of cars. On July 7, 2009, the rail cars came loose, rolled several miles, and some of the cars derailed.[1] As a result, potash spilled onto Indiana Rail's property, a ditch, and a wetland. Indiana Rail contacted the various state and federal agencies to coordinate a cleanup. It then contacted Mosaic and requested that Mosaic assume responsibility for the cleanup efforts. Mosaic declined to do so. Mosaic also refused to reimburse Indiana Rail for the costs of the cleanup. Accordingly, in December 2009, Indiana Rail filed a five-count Complaint against Mosaic. In July 2010, this Court granted Mosaic's motion to dismiss Count IV of the Complaint. *See* Docket No. 41. Indiana Rail has now moved for summary judgment on Count I.[2]

## III. DISCUSSION

---

[1] There appears to be some dispute about how many cars derailed. Indiana Rail claims that 19 cars derailed. Mosaic claims that 22 cars derailed. Although this is a factual discrepancy, it is not material and does not preclude summary judgment.

[2] Indiana Rail's motion is actually styled as against Count II. However, in its reply brief Indiana Rail explains that this was an error. Accordingly, the Court will treat Indiana Rail's motion as against Count I, not Count II.

2

Count I of the Complaint is for breach of the May Contract. Indiana Rail has requested that the Court find that: (1) the May Contract is unambiguous; (2) under the terms of the May Contract, Mosaic is responsible for the costs and expenses of the cleanup unless Indiana Rail was either negligent or committed willful misconduct; (3) Mosaic's allegations in its Counterclaim (Docket No. 26) fail to support a finding of negligence; and (4) Mosaic breached the May Contract by refusing to take over the cleanup efforts. In response, Mosaic appears to confuse the issue and spends most of its brief arguing that Indiana Rail was negligent. Indiana Rail did not move for summary judgment on this issue, nor does the Court need decide the negligence issue in order to resolve the present motion.

In Indiana, "[i]nterpretation of the language in a contract is a question of law especially suited for summary judgment proceedings." *J.C. Penney Co., Inc. v. Simon Property Group, Inc.*, 928 N.E.2d 579, 582 (Ind. Ct. App. 2010).

> Under Indiana state law, the court's goal in interpreting a contract is to "give effect to the parties' intent as reasonably manifested by the language of the agreement." *Reuille v. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Indiana follows the rule that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006) (citation omitted). Therefore, unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Reuille*, 888 N.E.2d at 771.

*Holmes v. Potter*, 552 F.3d 536, 539 (7th Cir. 2008).

The May Contract states:

> [Indiana Rail] agrees, . . . to be responsible for the railcars during movement, but assumes no responsibility for the condition, security, contents or acts of God while the railcars are in storage per this Contract. Storage will be at Mosaic's sole risk in all respects with the exception of negligence or willful misconduct.

Docket No. 54 Ex. 1 at 8.

Indiana Rail argues that the plain language of the contract indicates that "from the time the rail cars are received by [Indiana Rail] from Mosaic until the time that the cars are set out and secured on the designated storage track, the risk of loss for damage to the cars and their contents is to be borne by [Indiana Rail]." Docket No. 53 at 8. "However, once the cars are set out and secured by [Indiana Rail] on the storage track, the risk of loss passes to Mosaic." *Id.* Of course, if Indiana Rail is negligent or if it is found to have committed willful misconduct, then Mosaic is not liable for the rail cars.

In response, Mosaic claims that the risk of loss never transferred to Mosaic because Indiana Rail was negligent in setting or securing the cars on the storage track. *See* Docket No. 58 at 8. This interpretation is simply not supported by the plain language of the May Contract. The only requirement necessary for Mosaic to assume liability for the rail cars' condition was Indiana Rail placing them into storage. Here, the undisputed evidence is that the rail cars were placed in storage on June 12, 2009, when Indiana Rail moved the rail cars to a storage track. The rail cars remained in storage until July 7, 2009, when they derailed. Accordingly, as long as Indiana Rail was not negligent, pursuant to the plain language of the May Contract, Mosaic is liable for the rail cars' condition.

The May Contract also states:

> Should any discharge, leakage, spillage, emission or pollution arise from Mosaic's cars stored on [Indiana Rail] and have the reasonable potential to or adversely affect any property, whether owned, controlled or occupied by [Indiana Rail] or any third person, Mosaic agrees to respond to the satisfaction of any governmental body having jurisdiction in the matter or to the reasonable satisfaction of [Indiana Rail] if such adverse affect is not subject to any governmental body. If the incident is an emergency, such that time does not allow Mosaic to first respond and [Indiana Rail] does so, Mosaic agrees that it shall relieve [Indiana Rail] of response obligations at the earliest reasonable time, shall inform appropriate governmental bodies that it is the responsible party for

> such incident and shall assure that all response obligations are carried out in full compliance with applicable laws, rules and regulations. Unless caused by the negligence or willful misconduct of [Indiana Rail] or its employees, agents or contractors, in addition to loss or damage described above, Mosaic shall reimburse [Indiana Rail] for all costs incurred in first responding to such incident, including the costs of any third party retained to respond.

Docket No. 54 Ex. 1 at 8.

Indiana Rail asserts that this provision "provides that the risk of loss associated with a spill of potash while the cars are being stored is to be borne by Mosaic unless Mosaic can prove that the event resulting in the spill was caused by the negligence of [Indiana Rail]." Docket No. 53 at 9.

In response, Mosaic asserts that it is shielded from liability because Indiana Rail was negligent. That is neither here nor there. The issue of Indiana Rail's negligence (if any) is not presently before this Court. All Indiana Rail requests is that the Court interpret the parties' May Contract. Based on the plain language of the May Contract, Mosaic was obligated to respond to the potash spill as soon as possible. Mosaic expressly agreed to "relieve [Indiana Rail] of response obligations at the earliest reasonable time." Docket No. 54 Ex. 1 at 8. Moreover, Mosaic agreed to reimburse Indiana Rail "for all costs incurred in first responding to such incident" so long as the incident was not "caused by the negligence or willful misconduct of [Indiana Rail] or its employees, agents or contractors." *Id*.

The undisputed evidence is that Indiana Rail treated the potash spill as an emergency and "initiated efforts to remove the damaged rail cars and contain and clean up the spilled potash." Docket No. 53 at 4. Indiana Rail notified Mosaic and requested that it take over responsibility for the cleanup. Mosaic refused to do so. This was a violation of the clear provisions of the May Contract. Moreover, unless Indiana Rail is found to be negligent, under the plain language of the

5

May Contract, Mosaic is responsible for reimbursing Indiana Rail for all cleanup costs.

Finally, Indiana Rail argues that several of the allegations in Mosaic's Counterclaim (Docket No. 26) fail to establish that Indiana Rail was negligent. Mosaic's Counterclaim alleges that Indiana Rail was negligent in failing: (1) "to take appropriate measures to ensure that the railcars could not derail, including but not limited to the use of a derailer device," Docket No. 26 at 15; (2) "to prevent the disengagement of the railcars stored and secured on the track and subsequent derailment of 19 railcars," *id*.; and (3) "to take adequate security measures to ensure that the railcars were secured and could not be tampered with by third parties, so that they could become disengaged from their location and derail, when it knew or should of known that the cars could be tampered with." *Id*.

According to Indiana Rail, Mosaic's allegations are essentially that Indiana Rail failed to adequately supervise, secure, or inspect the railcars. Indiana Rail then points to the May Contract, which states:

> In no event hereunder will [Indiana Rail] have any routine duty in the ordinary course to provide any supervision, security or inspection for the railcars while they are stored pursuant to this Contract, and the non-performance of such action by the [Indiana Rail] in the ordinary course shall not be deemed negligent for any purpose herein.

Docket No. 54 Ex. 1 at 8.

Ultimately, a jury will have to decide whether Indiana Rail was negligent, and if so, what conduct constitutes negligence. In making this determination, the jury will be guided by the provisions of the May Contract. Accordingly, at this time the Court is unable to grant this portion of the Plaintiff's motion.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's Partial Motion for Summary Judgment (Docket No. 52) is **GRANTED IN PART AND DENIED IN PART**. To the extent the motion seeks interpretation and construction of the May Contract, the motion is **GRANTED**. However, to the extent the motion seeks a ruling as to the Defendant's Counterclaims, the motion is **DENIED**.

SO ORDERED: 03/10/2011

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

James A. Fletcher
Fletcher & Sippel LLC
jfletcher@fletcher-sippel.com

Janet H. Gilbert
Fletcher & Sippel LLC
jgilbert@fletcher-sippel.com

Kristin M. Liddle
Fletcher & Sippel LLC
kliddle@fletcher-sippel.com

Joseph G. Lyons
Cozen O'Connor
333 W. Wacker Drive
Suite 1900
Chicago, IL 60606-1293

Kevin McShane
kmcshane52@hotmail.com

Edward M. Ordonez
Cozen O'Connor
eordonez@cozen.com